## WESTERN UNION TELEGRAPH COMPANY v. FELIX HILLER.

### [47 South. 377.]

TELEGRAPH COMPANY. *Delayed message. Punitive damages. Excessive verdict.*

Where a telegraph company received a message at one of its Virginia offices for transmission to a Mississippi office of the company and allowed six hours to elapse before it reached the office to which it was directed and two hours to pass thereafter before placing it in the hands of a messenger for delivery to the sendee, living within two city blocks of the telegraph office, and the messenger, after tendering it to a wrong person, returned it to the office at nine o'clock p. m. and was directed to retain it until the next day, which he did, the company is liable for actual damages, and, in the discretion of the jury, for punitive damages; but in such case a verdict for one thousand dollars as punitive damages is excessive and should be reduced to one-half that sum.

FROM the circuit court of Madison county.

HON. WILEY H. POTTER, Judge.

Hiller, appellee, was plaintiff in the court below; the telegraph company, appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

The appellee was in Lynchburg, Va., and, being advised that his mother was sick in Canton, Miss. sent a telegram to his brother, E. Hiller, at Canton, as follows: "Wire me ma's con-dition and will come home if necessary."

This message was delivered to the telegraph office in Lynch-burg, Va., at 1 o'clock in the day, was received by the Canton office of the company at 7 p. m. of the same day. The message was given to a messenger boy for delivery at 9 o'clock p. m., the same evening and he took it to another man, named Hiller, who advised him of the mistake, and the messenger boy in-formed the agent of the telegraph company of what had been done and was instructed by the agent to wait until next morning to deliver it. The message was delivered the following morn-ing, between 7 and 8 o'clock. The testimony shows that E Hil-ler's place of business and residence were both within two city blocks of the telegraph office. Felix Hiller, receiving no an-swer to his telegram, sent a night dispatch advising his brother that he would return at once, and left Virginia for Canton, be-fore doing so, however, he made several trips to the telegraph office to inquire for an answer. He left Virginia at 6 o'clock on the morning after he sent the night message and upon his arrival in Canton found that his mother was not much sick and that there was no necessity for his coming, which would have been avoided, had his telegram been delivered promptly. He brought suit against the company for damages, and was awarded $67 actual damages and $1,000 punitive damages.

*Harris & Willing,* for appellant.

There is nothing whatever in plaintiff's case which can be taken as evidence of wilfulness or "as negligence so gross as to evince an utter disregard for the plaintiff's rights," to use the language of the instructions given for the plaintiff. If it was the idea of the court that the statement of the operator to the messenger boy that he need not deliver the message until the next morning, is taken as evincing a wilful wrong, we say this

affords no warrant for such a view.    The messenger boy, a wit-
ness for the plaintiff, testified that the message he had, and was
telephoning about, was a night message; the record shows that
a night message was sent; and if it was a night message, as.
shown by the contract on the fact of the message itself, the mes-
sage was not to be delivered until the following day.    So mani-
festly, this cannot be treated as wilfulness, or as gross negli-
gence, or as tending to prove it, or as negligence at all.    *Tele-
phone Co. v. Baker,* 85 Miss. 486.

Surely, the court would not hold that the plaintiff could dis-
regard the testimony of one of his witnesses and take the testi-
mony of the other, to suppport his claim for punitive damages.
The messenger boy was not an employee of the telegraph com-
pany; and he testified that the message which he was talking
about, and which he delivered in the morning, was the night
message, and that he had received the message from the office
at about 8 or 9 o'clock at night.

Surely this court will not allow such a monstrous judgment
for punitive damages to stand.    In this sort of a case, there
must be some clear testimony which would support a verdict for
wilful wrong; and we earnestly insist that there is no such testi-
mony in this case.    There might have been negligence, but
there is no wilful wrong shown; and this court has laid down in
the clearest and most unmistakable terms the principle govern-
ing the award of punitive damages.

In the case of *Railroad Co. v. Marlett,* 78 Miss. 872, 29
South. 62, this court said:

"For a wilful wrong that gives a cause of action for the impo-
sition of exemplary damages, must be denoted by a wrongful
act done with a knowledge of its wrongfulness." *Telephone Co.
v. Allen,* 89 Miss. 832.

*Pratt & Reid,* for appellee.

Counsel for appellant urge very strongly upon the court that
this is not a case for infliction of punitive damages, but when

they go into details in their argument, we find that it is based upon the idea that the message which was delayed in delivery was the night message. We frankly concede that this would not be a case for punitive damages if the message delayed was the night message, but if we accept the state of facts which the jury accepted, and hold that the message delayed was the message declared upon, then we confidently assert that this is a most proper case for the infliction of exemplary damages.

It is not our contention that the operator and messenger boy acted maliciously in failing to deliver the telegram promptly, but that they were guilty of negligence so gross that it was equivalent to a wilful wrong, that it evinces an utter disregard for the rights of appellee. The operator knew the contents of the message, its importance to appellee, was apparent upon its face, and when she failed to place it in the hands of the messenger boy for delivery from 7:15 to 9 o'clock and in addition to that delay instructed the messenger boy that he need not deliver it until next morning, we submit that her action was a wilful wrong and showed an utter disregard of consequences.

Counsel for appellant also cite the case of Telephone Co. v. Baker, 85 Miss. 486, 37 South. 1012, in support of their contention. In that case, the operator refused to make a long distance connection for plaintiff until he had paid his telephone dues. As the court says, this action may have constituted a wrong on the part of the employees of the telephone company, but it was not shown that they knew they were committing a wrong when they did it, on the contrary; in that case, it was shown that they were carrying out the rules of the company as they understand them.

Reference is also made by counsel to the case of *Telephone Co. v. Allen,* 89 Miss. 832, 42 South. 666, a case much nearer in line to the case at bar than either the *Marlett case* or the *Baker case.* In that case, the plaintiff put in a long distance telephone call early in the morning and agreed to pay a messenger fee to have his party called to the telephone. One mes-

sage was sent for the party, and when he did not return, another messenger was sent, who reported that he was unable to locate the party; so that as a cousequence the party did not receive the notice that he was wanted until about 6 o'clock in the evening. While the company may not have done its full duty in trying to locate the party, still it was guilty of only ordinary negligence, if guilty at all. It is not shown in that case that the telephone company had any notice whatever of the importance of the message to be delivered, or that any expense or mental suffering would be the logical consequence of their failure, while in the case at bar both of these facts were apparent upon the face of the message delayed.

It seems to us that our case is on all fours with the *Watson case,* and we commend it to the careful consideration of the court.

Mrs. Bettie Watson's husband died in Birmingham. Her brother-in-law delivered a message to the telegraph company to be transmitted to her at Batesville. Mrs. Watson lived some distance in the country, and of course there was no duty incumbent upon the telegraph company to deliver the message to her home. Several inquiries were made by Mrs. Watson on the day and the day after the telegram was sent, and she was informed by the operator that there was no message for her. As a matter of fact, the message was promptly transmitted to Batesville office, and the operator seems to have been under the impression that the message was for a negro woman as it was addressed to "Bettie Watson," and had his porter make several attempts to locate a negro by that name. The court held that this was a case for the infliction of punitive damages and allowed the verdict for $1,000 to stand, less $100 which was remitted on account of improper testimony that it cost $100 to exhume and rebury the body. *W. U. Telegraph Company v. Watson,* 82 Miss. 101, 33 South. 76.

In that case, there was no active wrongfulness on the part of the operator, only a gross negligence and indifference. In

this case the additional element of an active wrong is found when we note that the operator instructed the messenger that he need not deliver the message until next morning.

WHITFIELD, C. J., delivered the opinion of the court.

We are satisfied that the case was a proper one on the testimony for the imposition of punitive damages. The telegram the boy, Johnny Shropshire, had and which he did not deliver until the next morning at breakfast was manifestly the day dispatch. This question of fact was submitted to the jury under instructions specifically calling for response by them on that point, and therefore their verdict must be accepted as a finding that it was the day dispatch. It seems to have been very unreasonably delayed in transmission; but it was clearly most unreasonably delayed in delivery, after reaching Canton. It ought to have been a very simple matter to have found either the residence or office of the sendee, both being within two blocks of the telegraph office, and it was unquestionably a willful wrong on the part of the operator to tell the boy that he need not bother to deliver it until the next morning, after he had been out with the dispatch in his hands from about 7 to 9 o'clock at night.

But we do not think the circumstances show so gross a wrong—one so wanton and reckless as to warrant a verdict for $1,000 as punitive damages. The verdict is excessive.

If the plaintiff will remit the punitive damages down to $500, the judgment will be affirmed; otherwise, reversed and remanded.